IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD SHARIF, | ) | |
| | ) | Case No. 19-cv-06035 |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| HORACE FOX, JR., individually and as | ) | Honorable John Robert Blakey |
| Trustee, BRUCE DE'MEDICI, BRADLEY | ) | |
| BLOCK, ARTHUR NEWMAN and | ) | |
| LUMA HAMBAROUSH-SHARIF, | ) | |
| | ) | |
| Defendants. | ) | |

**BLOCK AND DE'MEDICI'S MOTION
TO REFER CASE TO BANKRUPTCY COURT**

NOW COME Defendants BRUCE DE'MEDICI and BRADLEY BLOCK, by counsel, and pursuant to 28 U.S.C. § 157(a), Local Rule of the Northern District 40.3.1(a) and Internal Operating Procedures of the Northern District of Illinois No. 15(a), respectfully move this Honorable Court to Refer this Case to the Bankruptcy Court. In support thereof, the Defendants state as follows:

INTRODUCTION

In this action, Richard Sharif has sued his bankruptcy trustee (Fox) along with his bankruptcy trustee's respective attorneys (Block and De'Medici). He has also sued his wife (Luma[1]), along with the attorney who represents Plaintiff's children in an ongoing state court divorce proceeding. As asserted in Plaintiff's *pro se* "Verified Complaint for Damages," Plaintiff's claims against Defendants arise in, and relate to, Plaintiff's bankruptcy proceedings. For the reasons set forth more fully below, this case should be referred to the Bankruptcy Court.

---

[1] Mrs. Hambaroush-Sharif is only referred to by her first name, Luma, simply because it is shorter and therefore more convenient.

## STANDARDS

As described in more detail below, this case arises in and relates to the bankruptcy case of *In re Richard Sharif*, Case No. 09-B-05868, pending in the United States Bankruptcy Court for the Northern District of Illinois.

28 U.S.C. § 1452 permits removal of civil cases that arise in and relate to bankruptcy proceedings. However, several courts have held that, when the civil case is already pending in district court, the proper procedure is to request the District Court to refer the case to the Bankruptcy Court pursuant to 28 U.S.C. § 157. *See Thomas Steel Corporation v. Bethlehem Rebar Industries, Inc.*, 101 B.R. 16, 19 – 21, 22 (Bankr. N.D. Ill. 1989), cited by *Global Aircraft Solutions v. Hamilton Aerospace Technologies, Inc.*, 2011 WL 166309, at 1 – 2 (Bankr. N.D. Ill. 2011); *Wellness International Network v. J.P. Morgan Chase Bank, N.A. (In re Sharif)*, 407 B.R. 316, 320 (Bankr. N.D. Ill. 2009) (removal from federal district court to bankruptcy court not proper).

Accordingly, 28 U.S.C. § 157(a) provides in pertinent part: "Each district court may provide that any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Local Rule 40.3.1, and Internal Operating Procedures 15(a) provide for such a referral.

Based on the facts set forth below, this case "arises in" and is "related to" *In re Richard Sharif*, Case No. 09-B-05868 pending in the United States Bankruptcy Court for the Northern District of Illinois (the "Sharif Bankruptcy Case").

## FACTS

1. Plaintiff, Richard Sharif, commenced the Sharif Bankruptcy Case by filing a petition for relief under Chapter 7 of the Bankruptcy Code on February 24, 2009. Fox is the Trustee in the Sharif Bankruptcy Case, and de'Medici is his counsel. See "Verified Complaint for

2

Damages," Doc. 1, at par. 1. Despite being more than 10 years old, the Sharif Bankruptcy Case remains open and active.

2. On August 24, 2009, Wellness International Network, Ltd. and related parties ("WIN") commenced an adversary proceeding against Richard Sharif, individually and as Trustee of Soad Wattar Revocable Living Trust of 1992, in the Sharif Bankruptcy Case, *Wellness International Network, Ltd. v. Richard Sharif*, U.S. Bankruptcy Court for the Northern District of Illinois Case No. 09-A-0770 (the "WIN Adversary").

    a. On July 6, 2010, the Bankruptcy Court issued an opinion finding, *inter alia*, that the Soad Wattar Revocable Living Trust of 1992, as Amended (the "Trust") was Richard Sharif's alter-ego. See **EXHIBIT A**, July 6, 2010 Order entered in the Sharif Bankruptcy Case, Doc. 53, at p. 18 (the "Alter Ego Order").[2]

    b. The Alter-Ego Order was a default order entered as a discovery sanction against Richard Sharif.

3. Shortly thereafter, on August 5, 2010, the Bankruptcy Court entered an order requiring third parties who held assets ostensibly in the name of the Trust (Hartford Insurance and Wells Fargo) to turn those assets over to the Bankruptcy Trustee. See **EXHIBIT B**, August 5, 2010 Second Order Granting Motion for Turnover entered in the Sharif Bankruptcy Case, Doc. 63.[3]

4. In response to these orders, one of Mr. Sharif's sisters, Ragda Sharifeh ("Ragda"), filed a slew of unsuccessful litigation related to the Alter Ego Order and the Turnover Order, claiming at various times to be the beneficiary of the Trust and the Trustee of the Trust. This litigation included, but is not limited to:

---

[2] Richard Sharif appealed the Alter-Ego Order all the way to the U.S. Supreme Court. Mr. Sharif ultimately lost his appeal on remand in the Seventh Circuit. *Wellness International Network, Ltd. v. Sharif*, 617 Fed. Appx. 589, 590 (7th Cir. 2015).

[3] Hereafter, citations to the Sharif Bankruptcy Case docket shall be indicated as "BK Docket No. __"

    a.    Her (and Haifa Sharifeh's) Complaint (and Amended Complaint) filed in the Circuit Court of Cook County, Illinois in July 2010 (Case No. 10 CH 30432);

    b.    Her Adversary Complaint filed in November 2019 in the Sharif Bankruptcy Case (Case No. 10-A-22339);

    c.    Her Petition to Intervene, filed in the Sharif Bankruptcy Case on December 3, 2010 (BK Docket No. 68);

    d.    Her Motion to Vacate Judgment or Stay Enforcement of Judgment, filed in the Sharif Bankruptcy Case on December 3, 2010 (BK Docket No. 67);

    e.    Her Complaint filed in the Circuit Court of Cook County Illinois on February 16, 2012 (Case No. 12 CH 5519, which was removed to become Case No. 12-A-0430 in the Sharif Bankruptcy Case); and

    f.    Her motion for leave to file a complaint against the Trustee and his counsel, filed in the Sharif bankruptcy Case on February 15, 2016 (BK Docket No. 253).

5.    As of this Motion, only Ragda's denied motion for leave to file a complaint against the Trustee remains pending on appeal in the Seventh Circuit, after she lost an appeal of that denial in the District Court).

6.    On September 12, 2015, another sister of Mr. Sharif, Haifa Sharifeh ("Haifa"), filed a Motion to Vacate the Turnover Order (BK Docket No. 194).[4]

    a.    Haifa asserted that Richard Sharif had resigned as Trustee pursuant to a November 1, 2007 "Revocation of Trustee," and that Ragda had become Trustee on that date; i.e. prior to the Alter Ego Order. *See* Exhibit 4 to the Complaint in this case. It was argued that Haifa's attempt to disprove Richard Sharif's status as trustee of the Soad Wattar Trust as of the date of the Alter Ego Order was a completely new theory (*i.e.* up until September 12, 2015, and despite years of litigation, no one (including Richard Sharif or Ragda) had ever provided a copy of this document in discovery or asserted it in any proceeding, and no one had asserted that Richard Sharif had resigned as Trustee on that date, and instead both Richard Sharif and Ragda had repeatedly asserted, to the contrary, that Richard Sharif was the Trustee until late July 2010);

---

[4]     Haifa and Ragda are referred to by their first names due to their apparently shared last names and due to the similarity in their last names to that of Plaintiff.

4

    b.    Haifa further claimed that she owned the Trust assets pursuant to a will (the "Second Will") dated April 28, 2007 that named her as executor of the probate estate of Soad Wattar (her mother, who died in March 2010). It was likewise argued that Haifa's attempt to disprove that certain assets belonged in the Soad Wattar Trust was again a completely new theory as no one (including Richard or Ragda) had ever asserted this April 28, 2007 before or provided a copy of this document in discovery or any proceeding, and instead Richard had produced a copy of a different will, dated April 26, 2008 (the "First Will"), naming him as executor of his mother's probate estate.

    c.    On June 19, 2019, after a four-day bench trial, the Bankruptcy Court denied Haifa's Motion to Vacate. Among other findings, the Bankruptcy Court determined that the Revocation of Trust was "not valid" and/or "forged" and that the Second Will was suspect. See BK Docket No. 566, at pg. 50 ("not valid."), pg. 53 ("forged"), and pgs. 43-50 (discussing the Second Will).

    d.    The Bankruptcy Court's June 19, 2019 ruling is currently on appeal before Judge Pacold under Case No. 18-cv-8508 (the "Haifa Appeal").

7. Beyond the Alter Ego Order and the Turnover Order, Plaintiff has also attempted to inject his divorce proceedings into the ongoing bankruptcy litigation.

8. For example, on July 29, 2019, Richard Sharif filed a Motion in the Haifa Appeal complaining, among other things, that the Bankruptcy Trustee should require his estranged wife Luma to pay rent for the marital residence because it was the property of the Bankruptcy Estate. (See Case No. 18-cv-8508, at Doc. No. 69). The District Court took that matter under advisement, although it noted that its jurisdiction was limited to the appeal. (See *Id.*, at Doc. No. 73).

9. Here, Plaintiff admits that his Complaint in this action is "related" to the Sharif Bankruptcy Case. See Complaint, at par. 3. Similarly, each of Plaintiff's accusations against the Defendants arises as an alleged result of some action (or inaction) taken in the Sharif Bankruptcy Court. For example:

    a.    Paragraph 1 alleges that the Bankruptcy Trustee and WIN conspired to obtain entry of the Alter-Ego Order.

    b. Paragraph 1 alleges that the Bankruptcy Trustee, Fox and de'Medici conspired with Richard Sharif's estranged wife and the child representative in his divorce case "to pressure Richard and his family into settling the bankruptcy case and to accept their loss."

    c. Paragraphs 9 - 17 of the Complaint attempt to assert reasons why the Alter-Ego Order and Turnover Order should not have been subsequently entered.

    d. Paragraphs 18 – 19 describes entry of the Alter-Ego Order and the Turnover Order, both described as acts of conspiracy and "fraudulent seizure" by the Bankruptcy Trustee, Block and de'Medici.[5]

    e. Paragraph 18 complains about fees and expenses that Block and de'Medici have received from the Bankruptcy Estate.[6]

    f. Paragraph 20-26 then complains about proceedings before the Bankruptcy Court relating to his ongoing divorce, challenging orders entered in the Bankruptcy Court as being the product of Defendants' asserted conspiracy (par. 23 and 25), negligence (par. 26) or intentional misconduct (*Id.*).

    g. Indeed, paragraph 31 explicitly alleges that the Bankruptcy Court and the Cook County divorce court are each an "enterprise" giving rise to Plaintiff's RICO claim.

10. As shown by the foregoing, the conduct at issue in the Complaint has been litigated, or is currently being litigated, within the structure of the bankruptcy system: from the Bankruptcy Court, to the District Court for the Northern District, to the Seventh Circuit, to the United States Supreme Court, and back down again. The Bankruptcy Court docket alone shows 620 entries over the last 10 ½ years (as of November 1, 2019).

11. Further, the Bankruptcy Court will have to rule on the propriety of this Complaint anyway. Richard Sharif cannot sue the Bankruptcy Trustee or his counsel without first obtaining Bankruptcy Court permission. *Matter of Linton*, 136 F.3d 544, 546 (7th Cir. 1998); *Newman v Crane, Heyman, Simon, Welch & Clar*, 590 B.R. 457, 461-62 (N.D. Ill. 2018) (noting that

---

[5]     Paragraph 18 accuses Art Newman of being part of this conspiracy, but Richard Sharif's divorce proceeding did not even commence until sometime in 2016. *See* Paragraphs 21 -22 of the Complaint.

[6]     These fees and expenses have all been awarded pursuant to Bankruptcy Court Orders. BK Docket Nos. 99, 134, 165, 180, 223, 274, 327, 356, 361, 390, 508 and 517.

requirement of obtaining permission extends to bankruptcy trustee counsel, citing *Lawrence v. Goldberg*, 573 F.3d 1265, 1269070 (11th Cir.) and *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1241 (6th Cir. 1993)). It would be a waste of judicial resources for this Court to learn about all of the pending and prior litigation in order to consider the merits when the Bankruptcy Court must also do so.

12. Counsel for Defendant Horace Fox, Jr. and Arthur Newman do not oppose the relief sought in this Motion. Counsel for Defendants de'Medici and Block has been unable to consult with Luma as it is unclear whether she has been served in this action - and in any event there is no appearance on file for her – but it is known that she is represented by counsel in the state court divorce action so no attempt has been made to contact her directly.

WHEREFORE, Defendants Bruce de'Medici and Bradley Block respectfully request that this Court enter an order referring this matter to the United States Bankruptcy Court for the Northern District of Illinois under a new adversary proceeding associated with the bankruptcy proceedings of *In re Richard Sharif*, Case No. 09-B-05868 and for such further relief as this Court deems proper.

Respectfully submitted,

/s/ Michael J. Corsi
Attorneys for Block and De'Medici

Daniel F. Konicek (6205408)
Michael P. Hannigan (6190132)
Thomas J. Long (6185763)
Michael J. Corsi (6289269)
KONICEK & DILLON, P.C.
21 W. State St.
Geneva, IL  60134
630.262.9655
dan@konicekdillonlaw.com
mhannigan@konicekdillonlaw.com
tlong@konicekdillonlaw.com
mcorsi@konicekdillonlaw.com